RUBY B. BENFIELD v. VIRGINIA B. COSTNER AND HUSBAND, LESTER S. COSTNER; AND L. S. STROUPE AND WIFE, BARBARA H. STROUPE

No. 8327SC276

(Filed 3 April 1984)

**1. Cancellation and Rescission of Instruments § 8; Fraud § 9; Rules of Civil Procedure §15— constructive fraud—insufficiency of complaint—trial by implied consent**

In an action to set aside a deed and a change of a life insurance beneficiary executed by the mother of the parties, plaintiff's complaint was insufficient to state a claim based on constructive fraud where it failed to allege the necessary confidential relationship between defendant and her mother. However, the issue of constructive fraud was tried by "implied consent" where plaintiff's evidence of the fraudulent act put defendant on notice of the constructive fraud theory, defendant failed to object to such testimony, and plaintiff's evidence tended to show a confidential relationship. G.S. 1A-1, Rule 9(b); G.S. 1A-1, Rule 15(b).

**2. Fraud § 13— constructive fraud in conveyance of homeplace—damages**

In an action based on constructive fraud by defendant in obtaining her mother's conveyance of the homeplace to her, plaintiff was entitled to recover one-half the value of the homeplace without deducting therefrom certain debts, expenses and taxes paid by defendant for the mother's estate.

APPEAL by defendants from *Saunders, Judge.* Judgment entered orally 2 September 1982 but signed 6 January 1983 *nunc pro tunc* in Superior Court, GASTON County. Heard in the Court of Appeals 9 February 1984.

*Frank Patton Cooke, by R. C. Cloninger, for defendant appellant.*

*Kennedy & Black, by K. Dean Black, for plaintiff appellee.*

BECTON, Judge.

I

On 20 May 1979, Mrs. Susan Bivens died testate, leaving all of her property, share and share alike, to her two surviving daughters—plaintiff Ruby B. Benfield and defendant Virginia B. Costner. Mrs. Bivens had executed her will on 30 June 1978. After the execution of her will, Mrs. Bivens deeded the homeplace to the defendant, Virginia Costner, on 27 December 1978. About the same time, Mrs. Bivens also changed the beneficiary

designation on one of her life insurance policies from plaintiff to defendant. After Mrs. Bivens' death, defendant sold the homeplace to Mr. and Mrs. L. S. Stroupe, on 13 July 1979, for approximately $10,000.00.

On 24 October 1979, plaintiff Benfield sued defendant Virginia Costner, her husband, and the Stroupes, alleging that her mother did not have sufficient mental capacity to make the transfers and averring further that defendant Costner obtained the property from her mother through duress, coercion and fraud. Plaintiff sought to set aside the conveyance of the homeplace, to set aside the change in beneficiary on the insurance policy, and also sought damages from the Costners in the amount of $10,-000.00 for the alleged wrongful conveyance of the homeplace and $785.85 for the alleged wrongful change of beneficiary on the insurance policy.

Prior to trial, plaintiff took a voluntary dismissal of her action as to the Stroupes. At trial, and upon the conclusion of all the evidence, the trial court dismissed all the original causes of action and instructed the jury on constructive fraud. The jury answered the issue in favor of the plaintiff, and judgment was then accordingly entered. Defendant appeals, contending that she is entitled to a dismissal since (a) the complaint fails to allege constructive fraud as a cause of action, and (b) the plaintiff's "evidence was not sufficient to go to the jury upon the issue of whether a relationship of special trust and confidence existed." Defendant also argues, alternatively, that if we "uphold the verdict of the jury, . . . the plaintiff should be entitled only to one-half of the difference between the [stipulated value] of the Bivens' homeplace ($10,500.00) minus those debts, expenses and taxes paid by the defendant and which were chargeable to the estate of Mrs. Bivens."

For the reasons that follow, we reject defendant's arguments and find no error in the trial.

II

[1] North Carolina is a notice pleading State, and detailed fact pleading generally is no longer required. *Sutton v. Duke*, 277 N.C. 94, 176 S.E. 2d 161 (1970). However, allegations of fraud are specifically excepted from the notice pleading approach. N.C. Gen.

Stat. § 1A-1, Rule 9(b) (1983) states: "In all averments of fraud, duress or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Actual fraud and constructive fraud satisfy the particularity requirement in varying ways. *Terry v. Terry,* 302 N.C. 77, 273 S.E. 2d 674 (1981).

> The very nature of constructive fraud defies specific and concise allegations and the particularity requirement may be met by alleging facts and circumstances '(1) which created the relation of trust and confidence, and (2) [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff.'

*Terry,* 302 N.C. at 85, 273 S.E. 2d at 679 (quoting *Rhodes v. Jones,* 232 N.C. 547, 549, 61 S.E. 2d 725, 726 (1950) ). Consequently, we must analyze the averments in the Complaint.

The Complaint fails to allege constructive fraud as a cause of action. Although the Complaint adequately alleges the fraudulent acts defendant committed, it does not establish the necessary confidential or fiduciary relationship between mother and defendant. Paragraph 3 of the Complaint alleges that "the plaintiff and defendant, Virginia B. Costner are the daughters of the late Susan Bivens . . ." An allegation of a "mere family relationship" is not particular enough to establish a confidential or fiduciary relationship. *Terry,* 302 N.C. at 86, 273 S.E. 2d at 679; *Mangum v. Surles,* 281 N.C. 91, 187 S.E. 2d 697 (1972). The allegations in paragraph 5 actually undermine a constructive fraud theory. "[T]he deceased was afraid and fearful of her daughter, Virginia B. Costner; . . . the said Virginia B. Costner had on numerous occasions, harassed, annoyed and coerced her mother in an attempt to have her convey all of her property. . . ."

Were we to decide the action on the sufficiency of the pleadings alone, the defendant would prevail. But a defective complaint does not foreclose the submission of the constructive fraud issue to the jury. *Mangum.* In *Mangum* the complaint did not "state 'with particularity' the circumstances constituting the alleged [constructive] fraud." 281 N.C. at 96, 187 S.E. 2d at 700. However, plaintiff's testimony and evidence fleshed out the fraudulent act, making out a *prima facie* case of constructive fraud. The trial court refused to submit the issue to the jury. Our

Supreme Court reversed and remanded for a new trial after tracing the history of pleading from detailed fact pleading, in which failure to allege the facts constituting fraud absolutely barred jury consideration of the issue, to the present system of notice pleading. The pleading "with particularity" required by G.S. § 1A-1, Rule 9(b) "[i]n all averments of fraud" is complemented by N.C. Gen. Stat. § 1A-1, Rule 15(b) (1983). Rule 15(b) was enacted "to eliminate the waste, delay, and the injustice which sometimes resulted from belated confrontations between insufficient allegations and plenary proof. . . ." *Mangum*, 281 N.C. at 96, 187 S.E. 2d at 700. Rule 15(b) provides, in pertinent part:

> When issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, either before or after judgment, but failure so to amend does not affect the result of the trial of these issues.

Therefore, if the opposing party does not object to evidence outside the issues raised by the pleadings, the issue is tried with his "implied consent." *Mangum; see also* 1 McIntosh, *North Carolina Practice and Procedure* § 970.80 (Supp. 1970). The defendants in *Mangum* did not object—they impliedly consented by their silence—and the court held that the issue of fraud should have been submitted to the jury.

Having held that the pleadings in the case before us were inadequate, we now determine if the evidence supports the submission of the constructive fraud issue to the jury. Did the defendant impliedly consent to try the issue of constructive fraud? We believe so.

Before calling defendant as an adverse witness, plaintiff and her witnesses sought to establish that plaintiff was primarily responsible for caring for, and handling the business affairs of, Mrs. Bivens. Defendant, first as an adverse witness, and then in her case-in-chief, testified that she performed the major role in caring for and looking after Mrs. Bivens. Indeed, the eight witnesses called by plaintiff and the nine witnesses called by the defendant took almost diametrically opposed positions concerning

the care, concern, and expression of love shown to Mrs. Bivens by the party that called them as witnesses.

Defendant strenuously contends that plaintiff should not be allowed to abandon her original theory — that defendant did nothing to deserve the homeplace or insurance proceeds — in favor of her new constructive fraud theory — that defendant did so much for her mother that a confidential relationship was established. As defendant puts it, "[t]he defendant was unfairly 'hoist by her own pitard'; a pitard which was offered and was relevant to her defense of the original issues." If anything, defendant hoist herself by her own pitard. Conceding that defendant's testimony may also have been relevant to her defense of the original issues, we find that plaintiff's prior evidence put defendant on notice of plaintiff's constructive fraud theory. Before defendant testified, as an adverse witness, plaintiff had raised the issue of constructive fraud by presenting testimony on the second "element" — the "fraudulent act."

Q. Did your sister make any other comments to you during that meeting in Mr. Grigg's office concerning your mother making that deed?

A. Well, she kept telling me all the way to Gastonia that we would divide things right. That she had told mama she would do that and she said you know why mama did that. She said if she does it this way we won't have to pay any inheritance taxes and another thing, if she gets sick and with that little bit of property, she can't get no help from the county and so this way she can get more help from the county.

Q. Did she make any other comments to you during your meeting that day concerning the disposition of your mother's property?

A. Well, she told me that she had promised mama she'd divide it and said I'll do exactly as I said I'd do.

While in no way as specific or as compelling as plaintiff's testimony, the testimony of Gene Grigg, the attorney who prepared Mrs. Bivens' will, is also instructive. Recalling a conference he had in his office with plaintiff and defendant several days after Mrs. Bivens' death, Mr. Grigg testified:

Anyway, during the course of the conversation, I asked Mrs. Costner, you know, if she was willing to deed half the real estate to Mrs. Benfield and she did not ever say in my presence she was willing to do that. What she would say, she said, as I recall, I will do what's right and she looked at Ruby and she said I would do what I told you I'd do. She never in my presence stated what she told her she would do. So, I don't know but she repeated that statement two or three times because one time Ruby asked her about it and Mrs. Costner looked at her and said well, I'll do what's right. I'll do what I told you I'd do. What she said she'd do, she never said to me.

The testimony did not go to an issue raised by the pleadings. Defendant failed to object. The issue was tried by "implied consent." Any conflicts in the evidence were for the jury to resolve.

Again, in considering defendant's motion for a directed verdict, the trial court does not pass upon the weight or credibility of the evidence, the sole duty of the court being to determine whether there is sufficient evidence upon which a jury could base a verdict. *Roberts v. William N. & Kate B. Reynolds Mem. Park,* 281 N.C. 48, 187 S.E. 2d 721 (1972). Finding evidence in the record to support the theory of a constructive fraud, we find no error in the trial court's decision denying defendant's motion for a directed verdict and submitting the case to the jury.

### III

[2] We summarily reject defendant's alternative argument that plaintiff is not entitled to one-half of the value of the Bivens' homeplace, "since said sum should have been awarded through the estate of Susan Bivens, in order that the expenses chargeable against the estate could be credited against that amount." Before the case was submitted to the jury, both the plaintiff and defendant stipulated that the real property had a one-half value in the amount of $5,250 and that the proceeds of the life insurance policy in controversy had a value of $785.00, the total amount in controversy being $6,035. The court entered judgment in favor of the plaintiff in the amount of that stipulated sum, and we find no error. Further, defendant has not made, individually or on behalf of Mrs. Bivens' estate, any claim or counterclaim against the plaintiff for reimbursement of the expenses incurred by Mrs. Bivens.

Based on the foregoing, we conclude that defendant had a trial free of prejudicial error.

No error.

Judges ARNOLD and WHICHARD concur.